UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| AMERICAN LAND HOLDINGS OF INDIANA, LLC, et al., | ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) CAUSE NO.  2:08-cv-448-WTL-WGH ) |
| STANLEY JOBE, et al., | ) ) |
| Defendants. | ) ) |
| AMERICAN LAND HOLDINGS OF INDIANA, LLC, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) ) |
| WILLIAM BOYD ALEXANDER, | ) ) |
| Defendant. | ) |

FINDINGS OF FACT AND CONCLUSIONS OF LAW FOLLOWING TRIAL

A bench trial was held in this case beginning on May 28, 2009.  In a nutshell, the issue before the Court is whether a 1903 deed entitles the Plaintiffs to utilize surface mining to remove coal from certain land in Sullivan County, Indiana.  The Court hereby makes the following findings of fact and conclusions of law.[1]

I.  FINDINGS OF FACT

A.  The Parties

Plaintiff American Land Holdings of Indiana, LLC, ("American Land") is a limited

---

[1]Any finding of fact more appropriately considered a conclusion of law should be so deemed and vice versa.

liability company the sole member of which is American Land Development, LLC, a limited

liability company that also has one member, Peabody Investments Corp.  Peabody Investments

Corp. is a Delaware corporation with a principal place of business located in Missouri.  Plaintiff

Midwest Coal Reserves ("Midwest Coal")  is a limited liability company whose sole member is

American Land.

      Defendant Stanley Jobe is an Indiana citizen, as was his wife, Rita R. Jobe, who also was

named as a defendant.  Mrs. Jobe passed away during the pendency of this lawsuit; the Estate of

Rita Jobe, Stanley Jobe, personal representative, thereafter was substituted as a defendant.

Defendants Sandra A. Wolfe and Mark Richards are citizens of Indiana; Defendant Rebecca

Staton is a citizen of Illinois; and Defendant William Boyd Alexander is a citizen of Michigan.

### B.  The Real Property at Issue

      This case involves real property in Sullivan County, Indiana ("the Subject Property").

The Subject Property is comprised of three tracts.  One of the tracts is owned by Defendant

Alexander; it is located in the northwest corner of the Subject Property and is comprised of

approximately three acres ("the Alexander Property").  As explained in more detail below, the

two other tracts are owned by the remaining Defendants ("the Jobe Defendants"); one tract is

approximately one acre and the other is approximately fifty-eight acres (together "the Jobe

Property").

      In 1893, the Subject Property was conveyed to Ella and James Roach through a family

inheritance.  The Roaches had also owned a nearby piece of property that was approximately 40

acres ("the South 40"); they sold the South 40 in April 1903, but retained the mineral and mining

rights.  In May 1903, the Roaches executed a deed (hereinafter referred to as "the Severance

Deed") that conveyed the mineral interests in both the Subject Property and the South 40.  The

Severance Deed read, in relevant part:

Ella A. Roach
   To                               Rec'd May 15, 1903 @ 4 p.m.
Pan Con          WARRANTY        WL Hunt

       This Indenture Witnesseth that Ella A. Roach and James Roach, her husband, of Greene County in the State of Indiana convey and Warranty to Pan Con Coal Co, a corporation organized under and existing by virtue of the laws of the State of Indiana and having its principal office at Linton, Greene County, in said State of Indiana for and in consideration of the sum of Thirty-five Hundred Dollars, the receipt of which is hereby acknowledged, all the coals, clays, minerals and mineral substances underlying following Real Estate in Sullivan County, State of Indiana to-wit: The NW ¼ of the NW ¼ and 22 acres off West side of NE ¼ of NW ¼ of Section 26, Town 7 North, Range 8 West. The NE ¼ of NW ¼ of Section 35, Town 7 North, Range 8 West except 6 acres off East side of North half of said tract containing in all 102 acres, together with the right to mine and remove said coals, minerals and mineral substances without further payment of any nature whatsoever. It is mutually agreed and understood that said Pan Con Coal Co it's successors and assigns is not to be held to any responsibility or accountability for any damages near or remote or consequences occasioned by mining or removing of said coals, clays, minerals or mineral substances not to exceed 5 acres. It is further understood and agreed that Grantors herein will at any time hereafter upon demand and payment therefor at rate of $30 per acre convey to grantee it successors and assigns without further payments than above set out such portion of surface of said Real Estate as may be necessary for location of coal mines, tracks, tipples, railroads, railroad switches and all buildings necessary to carry on business of mining and transporting said stone, coal, clays and other minerals or mineral substances. It is further agreed that grantee herein its successors and assigns is hereby granted the use of so much of surface of said Real estate as may be necessary in putting down test holes and holes for pumping water from and for ventilating and draining mines and for other like purposes necessary to secure grantee's mining and removing that portion of said Real Estate thereby granted and conveyed to it. No stone, coal or other minerals to be mined or removed from under any dwelling house now situated on said Real Estate. Five acres of surface where present buildings are now situated is reserved by grantors.

3

There was no entity called "Pan Con Coal Co" in 1903.  However, the Court determines that the preponderance of the evidence demonstrates that the term "Pan Con Coal Co" in the Severance Deed referred to the Panhandle Consolidated Coal Company, which did exist. Specifically, the fact that the County's 1903 transfer book listed the conveyance of the mineral estate as being from Ella Roach to "Panhandle Con. Coal Co." suggests that the term "Pan Con Coal Co" in the deed was understood at the time to be an abbreviation for Panhandle Consolidated Coal Co.  Even more tellingly, in the following year the Roaches conveyed the Subject Property to Abner Richards; that conveyance noted that it was "subject to the mineral and mining rights and privileges heretofore granted to Panhandle Consolidated Coal Co."  In 1922, Abner Richards conveyed a three-acre portion[2] of the Subject Property (now the Alexander Property) to his son Theodore Richards; this conveyance also was made "[s]ubject to the mineral and mining rights and privileges heretofore granted to Panhandle Consolidated Coal Co."  Theodore Richards, in turn, conveyed the three-acre tract to Defendant Alexander's parents; once again, the conveyance was made "subject to the mineral and mining rights and privileges heretofore granted to Panhandle Consolidated Coal Co."  Defendant Alexander inherited the Alexander property upon his mother's death.

In 1927 Abner Richards conveyed the approximately 58 acres he retained (the Jobe Property) to Joe Beasley, "subject to mineral rights heretofore conveyed or reserved." In

_____

[2]The legal description of the conveyed tract was:

Beginning at the northwest corner of the northwest quarter (NW ¼) of the northwest quarter (NW¼) of section 25 township 7 north range 8 west and running east forth (40) rods, thence south twelve (12) rods, thence west forty [40] rods, thence north twelve (12) rods to the place of beginning containing three acres.

4

November of that year, Beasley contracted with William and Alice Ferguson to sell the land to them.  The contract of sale excepted "all instruments conveying the coal and other underlying minerals and all mineral rights heretofore conveyed."  Beasley filed for bankruptcy in 1930.  In 1931, the Fergusons brought a quiet title action in Sullivan Circuit Court against Beasley, his wife, and the trustee of his bankruptcy estate.  That quiet title action resulted in a Commissioner's Deed being recorded on May 26, 1931, which indicated that the real property described therein (the Jobe Property)[3] had been conveyed from Beasley to the Fergusons subject to an existing mortgage.  The Commissioner's Deed does not mention the mineral rights.

The Fergusons conveyed the Jobe Property via a warranty deed dated September 10, 1942, to Ralph and Eva Richards.  That deed also did not mention the mineral rights.  Ralph and Eva conveyed one acre of the Jobe Property to Stanley and Rita Jobe via warranty deed dated August 14, 1962; Stanley became the sole owner of that tract upon Rita's death.   The 1962 deed stated that the conveyance excepted "all the coal and other underlying mineral as heretofore conveyed or reserved."  The remaining acres were inherited at various times by Defendants Rita Jobe, Sandra Wolfe, Mark Richards, and Rebecca Staton.  Therefore today the Jobe Property is owned by the Jobe Defendants:  Stanley Jobe, Sandra Wolfe, Mark Richards, Rebecca Staton,

---

[3]The legal description of the approximately 58 acres in the Commissioner's Deed is as follows:

> The Northwest quarter of the Northwest quarter of Section 26, excepting the following described tract, to-wit:  Beginning at the Northwest corner of said quarter and running thence East 40 rods; thence South 12 rods; thence West 40 rods; thence North 12 rods to the place of beginning, containing in said exception three acres.
>     Also a strip of uniform width of 44½ rods off of the West side of the Northwest quarter of the Northwest quarter of Section 26, all in Township 7 North, Range 8 West.

and the Estate of Rita Jobe, with Stanley as personal representative.

Through a series of recorded conveyances, the Plaintiffs are now the owners of the mineral rights that were conveyed by the Severance Deed. Plaintiff American Land is the owner of the mineral rights in the Alexander Property and approximately the north half of the Jobe Property; Plaintiff Midwest Coal Reserves is the owner of the remainder.

### C.  Mineral Tax Payments

The Sullivan County Mineral Tax Duplicate Record demonstrates that mineral taxes were assessed and  paid on the mineral estates of the Subject Property from 1903 to 1925 and from 1955 to the present.   The relevant County records are missing for the years 1925 to 1954. However, there is evidence of record from which one can reasonably infer that the mineral taxes also were paid with at least some consistency during that time period.  Specifically, the record indicates that Sullivan County conducted foreclosures and tax sales of mineral estates for nonpayment of taxes during the decades in question, but no such sale relating to the Subject Property was conducted.  Therefore, the Court determines that the Plaintiffs have proved by a preponderance of the evidence that there was no significant period of time–and certainly no twenty-year period–from 1903 to the present during which the mineral taxes on the Subject Property went unpaid.

### D.  The Coal

Regardless of the type of mining that is used, it will not be feasible to remove all of the coal from the Subject Property.  However, surface mining, also known as strip mining,  will permit the removal of far more of the coal than underground mining would.  The evidence of record establishes that it is reasonably necessary to use surface mining to remove the coal on the Subject Property.

6

The current market value of the coal recoverable by surface mining is between $40.00 and $75.00 per ton.  Assuming a price of $50.00 per ton, the market value of the recoverable coal, estimated to be almost 1.2 million tons, would be $183,920,000.  The Plaintiffs would be due a royalty of 5% of this amount (over $9 million) under a lease agreement they currently have with Bear Run Coal Company.

There were no surface coal mines in Sullivan County until 1918, because the technology necessary for surface mining was not available.[4]  Coal that penetrated the surface of the ground, called outcropping, was removed from the surface, but there is no evidence that the removal of outcropping is the same as, or even similar to, the process of surface mining.  The evidence of record establishes that to residents of Sullivan County in 1903, coal mining meant the recovery of coal using underground coal mining techniques.

## II.  CONCLUSIONS OF LAW

The Plaintiffs seek declaratory judgment that they have the right to remove the coal from the Subject Property by surface mining.  The Plaintiffs further seek the equitable remedy of specific performance of the Severance Deed, which they argue entitles them to purchase the surface of the Subject Property for $30.00 per acre in order to conduct surface mining.  Defendant Alexander asserts a counterclaim for declaratory judgment seeking a determination that Plaintiff American Land does not own the mineral rights to the Alexander Property.  The parties' arguments with regard to these claims are addressed, in turn, below.

---

[4]As the Plaintiffs mention, there is evidence that open pit mining for stone has been conducted for hundreds of years, although the Court notes that there is no evidence comparing such mining as it was conducted in 1903 to the type of surface coal mining they wish to conduct today.  However, while the Severance Deed transferred all mineral rights, including stone, this case is and has always been about the right to conduct surface mining of coal; the right to mine stone is not at issue.

### A.  Subject Matter Jurisdiction

This Court's jurisdiction over this case is based upon 28 U.S.C. § 1332 and therefore is dependent upon the existence of diversity of citizenship between the parties and an amount in controversy greater than $75,000.00.  As set forth above, the Defendants are citizens of Indiana, Illinois, and Michigan.  For purposes of diversity jurisdiction, both Plaintiffs are citizens of Delaware and Missouri.[5]  Therefore, there is diversity of citizenship between the parties. Because the Plaintiffs' right to remove the coal under the subject property is at issue in this case, and that coal is worth millions of dollars to the Plaintiffs, the amount in controversy requirement is easily satisfied.[6]

Nonetheless, the Defendants argue that this Court lacks subject matter jurisdiction over this case because the Plaintiffs are not the real parties in interest and therefore have no standing to bring this suit.  This argument is based upon an affidavit that was submitted by Kentland Holcomb, Operations Manager for Peabody Energy Corporation's Bear Run Project, which was filed in support of American Land's motion to expedite this case.  The Defendants seize on language in the affidavit that refers to "Peabody's" rights and "Peabody's" plans to mine the Subject Property and argue that this suggests that it is Peabody Energy Corporation–which is not registered to do business in Indiana–not American Land, that is the real party in interest.  This argument is specious, inasmuch as the second paragraph of the affidavit clearly indicates that the

_____

[5]For purposes of diversity jurisdiction, the citizenship of a limited liability company is determined by the citizenship of each of its members. *Thomas v. Guardsmark, LLC*, 487 F.3d 531, 534 (7th Cir. 2007).  Therefore, both the citizenship of both American Land and Midwest Coal is the same as that of Peabody Investments Corp.

[6]The Defendants' argument that attempts to tie the Plaintiffs' possible damages to the provisions of an existing lease agreement ignores the fact that the Plaintiffs' right to remove the coal–and therefore the value of that coal to the Plaintiffs–is what is in controversy in this case.

term "Peabody" is used throughout the affidavit to refer collectively to "Plaintiffs, together with applicable Peabody Energy Corporation operating subsidiaries." The evidence of record is clear that the Plaintiffs, not Peabody Energy Corporation, are the entities who claim to own the coal that is in dispute, and therefore the Plaintiffs are the real parties in interest in this case.

The Defendants' remaining arguments regarding subject matter jurisdiction actually relate to the merits of the Plaintiffs' claim of ownership and are irrelevant to the question of whether this Court has jurisdiction to hear those claims. It does.

### B. Ownership of the Coal

The Defendants make several arguments in support of their claim that they, not the Plaintiffs, own the coal under the Subject Property. For the reasons set forth below, the Court rejects each of these arguments and determines that the Plaintiffs are the owners of the coal.

### 1. "Pan Con Coal Co" vs. "Panhandle Consolidated Coal Company"

The Defendants argue that the Severance Deed is void because it purports to convey mineral rights to "Pan Con Coal Co," an entity that has never existed. The Defendants cite to numerous Indiana cases for the unsurprising proposition that "[a] deed naming a non-existent grantee is a nullity and passes no legal title to anyone." *LeRoy v. Wood*, 47 N.E.2d 604, 605 (Ind. Ct. App. 1943); *see also, e.g., Harriman v. Southam*, 16 Ind. 190 (Ind. 1861) ("A deed to a person having no existence is generally inoperative, and passes no title from the grantor. If a man grants his estate to an imaginary corporation which exists only in his mind, no title passes."). However, *LeRoy* continues as follows: "This rule does not apply, however, to a person in existence who is described by a fictitious or assumed name, and if a living or legal person is intended as the grantee and identifiable, the deed is valid however he may be named in the deed." 47 N.E.2d at 605.

9

In this case, the issue is whether an existing legal entity is identifiable as the grantee in the Severance Deed from the designation  "Pan Con Coal Co."  As set forth above, the Court finds that the Plaintiffs have demonstrated by a preponderance of the evidence that "Pan Con Coal Co" as used in the Severance Deed referred to the Panhandle Consolidated Coal Company, which did exist in Indiana in 1903, and that the Panhandle Consolidated Coal Company was the intended grantee.  As previously noted, in 1904 the Roaches conveyed the Subject Property to Abner Richards, and that conveyance noted that it was "subject to the mineral and mining rights and privileges heretofore granted to Panhandle Consolidated Coal Co."  That,  *inter alia*, demonstrates that the Roaches intended to convey the mineral rights to the Panhandle Consolidated Coal Company, even though the deed of conveyance used an abbreviated version of the name.[7]  The Severance Deed was not a nullity and did, in fact, convey the mineral rights in the Subject Property to an existing entity, the Panhandle Consolidated Coal Company.

## 2.  Ralph and Eva Richards as Bona Fide Purchasers for Value

The Jobe Defendants argue that when Ralph and Eva Richards purchased the Jobe Property from the Fergusons in 1942, they were bona fide purchasers for value who took title to the property without actual or constructive notice of Panhandle Consolidated Coal Company's ownership of the mineral rights.  This argument, which is based on the fact that there was no

---

[7]The Defendants argue that the correct name of the corporation was "Pan Handle [two words] Consolidated Coal Company" and that "Pan" cannot be considered an abbreviation for the two-word phrase "Pan Handle."  While the title of the corporation's articles of incorporation uses "Pan Handle," the legal name of the corporation in the same document is listed as "Panhandle."  The use of "Pan" in the deed sufficiently represents either the word or the two-word phrase.  The Defendants also point out that there is no period after "Pan" to indicate that it is an abbreviation.  However, an examination of the Severance Deed reveals several instances where periods were not used for obvious abbreviations, such as "PM," "W L Hunt," "Ella A Roach," and, despite the Defendants' assertion to the contrary, after the "Co" in "Pan Con Coal Co."  Therefore, the absence of a period is not evidence that "Pan" was not an abbreviation.

conveyance to "Panhandle Consolidated Coal Company" in the Fergusons' chain of title, the only conveyance of mineral rights having been made to "Pan Con Coal Co," is without merit.

A "purchaser of real estate is presumed to have examined the records of such deeds as constitute the chain of title thereto under which he claims, and is charged with notice, actual or constructive, of all facts recited in such records showing encumbrances, or the non-payment of purchase-money." *Weathersby v. JPMorgan Chase Bank, N.A.*, 906 N.E.2d 904, 910 (Ind. App. 2009) (citations omitted). While the failure to use precise or correct names in a deed or other recorded instrument can put the instrument outside of a subsequent purchaser's chain of title and therefore fail to put the subsequent purchaser on notice of it, in this case the chain of title for the Jobe Property contains the 1904 deed from the Roaches to Abner Richards  which is "subject to the mineral and mining rights and privileges heretofore granted to Panhandle Consolidated Coal Co." as well as the 1903 Severance Deed in which the Roaches conveyed the mineral rights to "Pan Con Coal Co."  These documents unequivocally put Ralph and Eva Richards on notice that the mineral rights had been severed from the property they were purchasing and conveyed to an entity referred to in an abbreviated manner as "Pan Con Coal Co" and more formally as "Panhandle Consolidated Coal Co."[8]  They therefore were charged with this knowledge and did not take title to the Jobe Property without knowledge of the severance of the mineral rights.[9]

---

[8]Indeed, their knowledge that they did not own the mineral rights is demonstrated by the fact that when they conveyed an acre of the property they purchased from the Fergusons to Stanley and Rita Jobe in 1962, that conveyance was made subject to "all the coal and other underlying mineral as heretofore conveyed or reserved."

[9]The Jobe Defendants also suggest that the fact that Eva and Ralph Richards purchased the Jobe Property after the Ferguson's quiet title action is relevant, but admittedly not determinative, of the issue of whether they were bona fide purchasers for value.  The Commissioner's Deed that resulted from the quiet title action–which is also part of the chain of title–makes it clear that the purpose of that action was to quiet title as between the Fergusons and

11

### 3.  Admission Against Interest by Plaintiffs

The Defendants argue that the Plaintiffs, through an affiliated company, made an

admission against interest in two maps that were submitted to the Department of Natural

Resources in conjunction with permit applications and which indicated that both the surface and

the mineral rights to the Alexander Property were owned by Defendant Alexander.  The Court

finds that the ownership of the mineral rights to the Alexander Property was irrelevant to the

purpose of the maps, and therefore the notations on the maps regarding the Alexander Property

are analogous to dicta in a judicial opinion and certainly are not binding admissions by the

Plaintiffs.

### 4.  The Indiana Dormant  Mineral Interests Act

The Indiana Dormant Mineral Interests Act ("the Act") provides:

> An interest in coal, oil and gas, and other minerals, if unused for a period of
> twenty (20) years, is extinguished and the ownership reverts to the owner of the
> interest out of which the interest in coal, oil and gas, and other minerals was
> carved. However, if a statement of claim is filed in accordance with this chapter,
> the reversion does not occur.

Ind. Code 32-23-10-2.   The Act in its original form (it has since been amended and recodified)

provided for a two-year grace period for filing a "statement of claim" to preserve unused mineral

interests; the Plaintiffs concede that no statement of claim was filed with regard to the Subject

Property during the grace period, which ended on September 3, 1973.

The Defendants argue that the mineral interest in the Subject Property went "unused for a

---

the Beasley bankruptcy estate; the owner of the mineral estate was not a party to the action, and
therefore it was not bound by it.  *See Popp v. Hardy*, 508 N.E.2d 1282, 1287 (Ind. App. 1987).
It would not have been reasonable for Eva and Ralph Richards to conclude that the quiet title
action somehow caused a reversion of the mineral estate; nor were they entitled to rely on the
Commissioner's Deed without regard to the rest of the chain of title.

period of twenty years" and therefore was extinguished by operation of the Act on September 3, 1973.  The Plaintiffs argue that the mineral interests have been continually "used" as defined by the Act because they and their predecessors have paid taxes on the mineral estate and "use" is defined by the Act to include the payment of taxes on the mineral interest by the owner of the mineral interest.  *See* Ind. Code 32-23-10-3(a)(6).  The Defendants argue that the fact that there is a gap in the tax records of greater than twenty years (from 1925-1954) is fatal to the Plaintiffs' position because there is no evidence that the mineral taxes were paid during that time period.

As set forth in the Court's findings of fact, the Court finds it more likely than not, based upon the fact that there is no evidence of any foreclosure or tax sale on the mineral estate, that there was no twenty-year period from 1903 to the present during which the mineral taxes on the Subject Property went unpaid.   However, even if there were, the Court does not believe that the mineral interest would have been extinguished by the Act under the circumstances of this case.

The Defendants argue that under the Act any mineral interest that was unused for any twenty-year period from the time the mineral estate was severed (in this case, 1903) until September 3, 1973, was extinguished on that date regardless of whether the owner of the mineral interest began using it again prior to the enactment of the Act.  In other words, the Defendants argue that if the taxes were not paid by the owner of the mineral interest in the Subject Property between 1925 and 1954, it did not matter what "use" occurred between 1955 and 1973; if no statement of claim was filed by September 3, 1973, to preserve the mineral interest, it was extinguished by operation of the Act on that date.

The Court disagrees with this reading of the Act.  Rather, the Court determines that the twenty-year period of non-use must have occurred beginning on or after September 3, 1951, which is twenty years prior to the effective date of the Act.  The language of the Act is

13

ambiguous; it refers to the extinguishment of an interest "if unused for a period of twenty years,"
which could either mean "an interest that has not been used for the past twenty years" or "an
interest that has not been used for any twenty-year period since its creation."[10]

> The rules of statutory construction require courts to give the words of a statute
> their plain and ordinary meaning unless the statute otherwise provides definitions,
> or unless the construction is plainly repugnant to the intent of the legislature.
> However, if a statute is susceptible to more than one interpretation, it is
> ambiguous. If a statute is ambiguous, then courts must give effect, and implement
> the intent of the legislature. In doing so, courts must examine the whole statute
> and not give too much meaning to any particular word or words in isolation, but
> should extract the purpose of the legislation and avoid an unjust or absurd result.

*Leone v. Commissioner, Indiana Bureau of Motor Vehicles*, 906 N.E.2d 172, 180-81 (Ind. App.
2009). In this case, the reading urged by the Defendants clearly is the less reasonable of the two
and would lead to an unjust result. Requiring the owner of a mineral interest to either ensure that
some act of use had occurred during the past twenty years or file a statement of claim is one
thing; requiring that same owner to file a claim unless it could be certain that there was no
twenty-year gap in "use" from the time of severance to 1973 is quite another.

More importantly, the purpose of the statute is wholly fulfilled by the former reading; the
State would gain nothing further by adopting the latter. As explained by the Indiana Supreme
Court:

---

[10]The United States Supreme Court apparently presumed that it was the former, as it
noted in its decision in *Texaco, Inc. v. Short* that "[i]f there has been a statutory use of the
interest *during the preceding 20-year period* . . . by definition there is no lapse-whether or not
the surface owner, or any other party, is aware of that use." 454 U.S. 516, 534 (1982) (emphasis
added). While dicta, this language supports the conclusion that this is the most logical reading
of the statute.

> The Act reflects the legislative belief that the existence of a mineral interest about which there has been no display of activity or interest by the owners thereof for a period of twenty years or more is mischievous and contrary to the economic interests and welfare of the public. The existence of such stale and abandoned interests creates uncertainties in titles and constitutes an impediment to the development of the mineral interests that may be present and to the development of the surface rights as well. The Act removes this impediment by returning the severed mineral estate to the surface rights owner. There is a decided public interest to be served when this occurs. The extinguishment of such an interest makes the entire productive potential of the property again available for human use.

*Texaco, Inc. v. Short*, 454 U.S. 516, 523 (1982) (quoting *Short v. Texaco, Inc.*, 406 N.E.2d 625, 627 (Ind. 1980)).  When, as in this case, the owner of the mineral interest had resumed use prior to the enactment of the Act, any uncertainty in title or other "mischief" caused by a prior period of misuse had been remedied, and requiring the now-active owner to file a statement of claim would add nothing.  Therefore, the Court declines to read the Act as imposing such a requirement.  Even if the mineral interests in this case were not "used" from 1925 to 1954, the fact that they have been used from 1955 to the present would have kept them from being extinguished by operation of the Act.

The Plaintiffs are the owners of the coal under the subject property.  Therefore, the Plaintiffs are entitled to judgment on Defendant Alexander's counterclaim seeking declaratory judgment that he owns the coal under the Alexander Property.

### C.  The Right to Conduct Surface Mining on the Subject Property

The 1903 Severance Deed was a valid conveyance of the mineral rights to the Subject Property to the Panhandle Consolidated Coal Company.  Through a series of conveyances over the years, the Plaintiffs are now the owners of those mineral rights.  The Plaintiffs argue that both the terms of the Severance Deed and relevant Indiana law also give them the right to remove the coal by surface mining.  The Defendants argue that the terms of the Severance Deed

15

limit the Plaintiffs to underground mining.  For the reasons set forth below, the Court agrees

with the Defendants.

The parties all agree that two Indiana cases–*Consolidation Coal Co. v. Mutchman*, 565

N.E.2d 1074 (Ind. App. 1990) ("*Mutchman I*") and *Mutchman v. Consolidation Coal Co.*, 666

N.E.2d 461 (Ind. App. 1996) ("*Mutchman II*")–are controlling, and, indeed, they are squarely

on-point with this case.  The *Mutchman* case involved 116 severance deeds that, like the

Severance Deed in this case, conveyed "all coal" underlying certain tracts of land.  The court

noted that

> The deeds in the present case vary greatly. Some simply grant "all coal"
> underlying the estate, with and without the provision "grantee not liable for
> damages to the surface," while others contain rights to use the surface, within
> limits, as may be necessary for shafts, "granting all such rights as may be
> necessary for the best operation of the coal mines," without liability for
> subsidence of the surface. Some contain options to purchase surface; others
> require payment for the use of the surface taken. Two sets appear to severely limit
> surface use, either by expressly stating that it is not the intention of the grantors to
> "grant any surface rights," or requiring the grantee to accommodate surface
> farming and pay damages for crops as the damage occurs.

*Mutchman I*, 565 N.E.2d at 1082.  The issue there, as here, was whether the grant of "all coal"

carried with it the right to remove that coal using surface mining.

The trial court had concluded that the deeds "were unambiguous and were intended to

convey 'all coal' regardless of the methodology which might be employed to remove it or the

depth where the coal could be found, except in those instances where the language expressly

limited the grant to a certain vein or seam or conveyed all but a certain vein or seam."  *Id.* at

1081.  The Indiana Court of Appeals recognized that the law of Pennsylvania, West Virginia,

and Ohio provided support for the surface owners' position that only the right to conduct

underground mining was conveyed along with the coal.   The court also noted that "Indiana law

16

provides support for the trial court's initial conclusion that a conveyance of 'all coal' is unambiguous," *id.* at 1082, and that under Indiana law, generally "the right to the coal carries with it as a necessary incident the right not only to penetrate the surface of the soil for coal, but also to use such means and processes for mining and removing the coal from the premises as may be reasonably necessary." *Id.* (citing *Ingle v. Bottoms*, 66 N.E. 160 (Ind. 1902)).  After examining relevant Indiana precedent, the court determined that

> in Indiana the question is not so much whether the deed is ambiguous but whether strip mining, even though not contemplated by the original parties, is reasonably necessary to effectuate the grant. This rationale, though clearly applicable to the majority of deeds, does not address those cases where the grantor expressly set out to preclude use of the surface or required immediate payment of damages for injury to crops. *In those cases, "all coal" may not have been intended to include the coal removable only by destroying the surface. Such grants are ambiguous and subject to more than one reasonable interpretation.*[11] To construe these deeds, it would be appropriate to permit the introduction of extrinsic evidence to aid in construction.

*Id.* at 1083 (emphasis added).  In *Mutchman II*, the court reiterated its holding that "in Indiana, coal owners have an implied right to access their coal through the surface."  666 N.E.2d at 466.  However, if a deed contains language that creates an ambiguity with regard to whether the parties really intended to convey all of the coal along with this implied right, or whether they intended to convey something less than that, then extrinsic evidence may be used to determine the parties' intent and interpret the scope of the conveyance.  *Id.* at 464.

Applying the reasoning of these cases to the Severance Deed at issue here, the Court

---

[11]To the extant that the Plaintiffs suggest that the only provisions that can render a severance deed ambiguous are those that "preclude use of the surface or require immediate payment of damages for injury to crops," that suggestion is untenable.  Those were the two types of ambiguity-creating provisions present in the deeds before the *Mutchman* court, but there obviously could be other types of provisions that also would create an ambiguity in a severance deed with regard to the interests the parties intended to convey.

finds that the Severance Deed is ambiguous in much the same way as one category of the *Mutchman* deeds was. The Severance Deed does convey "all the coals . . . together with the right to mine and remove said coals . . . without further payment of any nature whatsoever." This, by itself, appears to be an unambiguous grant of all of the coal and the right to remove it by any reasonably necessary means. However, the Severance Deed also contains the following provision: "It is mutually agreed and understood that said Pan Con Coal Co it's [sic.] successors and assigns is [sic.] not to be held to any responsibility or accountability for any damages near or remote or consequences occasioned by mining or removing of said coals . . . *not to exceed 5 acres*" (emphasis added). Like the provision in some of the deeds in *Mutchman* providing for payment for damage to crops, this provision suggests that "all coal" may not have been intended to include the coal removable only by destroying the surface, because it suggests that the parties contemplated that the mining operations would cause damage to no more than five acres of the surface and that any more extensive damage would exceed the parties' expectations (and the grantor's tolerance) and subject the grantee to liability. Therefore, like the *Mutchman* deeds that provided for payment for damage to crops, this deed is "ambiguous and subject to more than one reasonable interpretation," and extrinsic evidence may be considered in determining what the parties' intent actually was.

Unlike in *Mutchman*, however, where the extrinsic evidence demonstrated that "it was most likely that the grantors of the coal deeds were aware of the probability that their coal was being acquired for strip mining," *Mutchman II*, 666 N.E.2d at 465-66, the extrinsic evidence here compels the opposite conclusion. As previously noted, the record demonstrates that surface coal mining was not used in Sullivan County until 1918 because the technology necessary for surface mining was not available; therefore, the evidence of record establishes that the Roaches would

18

not have contemplated the possibility of surface mining being performed on their property. Thus, unlike in *Mutchman II*, where the court found that "if the grantors did not want their land strip mined, they could have clearly limited the use of the surface to preclude strip mining," 666 N.E.2d at 466,[12] the absence of an express prohibition against surface mining does not, by implication, mean that the conveyance of "all coal" in the Severance Deed included that coal which could be mined only by surface mining.

Of course, the fact that surface mining was not contemplated by the parties does not, by itself, compel a finding that the Plaintiffs have no right to surface mining. *See*, *e.g., Creasey v. Pyramid Coal Corp.*, 61 N.E.2d 477 (Ind. App. 1945) (holding that grant was broad enough to include the construction of electric transmission lines for coal mining operation, even though use of electricity for coal mining was unknown at time of conveyance). However, in this case the Court determines that the Severance Deed, when read as a whole, indicates that the term "all coal" was not intended to include the coal removable only by destroying the surface. This conclusion is based on several provisions of the Severance Deed. First, as already noted, the Severance Deed indicates that the parties expected the damage to the surface caused by mining to be limited to five acres. Second, the Severance Deed provides for the sale of the surface for $30.00 per acre, but only of "such portion of surface . . . as may be necessary for location of coal mines, tracks, tipples, railroad switches and all buildings necessary to carry on business of mining and transporting said stone, coal, clays, and other minerals or mineral substances." This

---

[12]The Court notes that even if the facts of this case were not readily distinguishable from those in the *Mutchman* cases, the Plaintiffs' reading of the holding in *Mutchman II* is overly broad. The Indiana Court of Appeals did affirm the trial court's ruling that the deeds in question conveyed the right to strip mine, but it did not hold, as the Plaintiffs assert, that such a ruling was required under the facts. Instead, the court simply applied the applicable standard of review and found that the trial court's findings were not clearly erroneous.

language also is consistent with the idea that the surface of the Subject Property was only to be used to the extent necessary to conduct underground mining.  Indeed, the Severance Deed continues with another provision limiting the use of the surface:  "It is further agreed that the grantee . . . is hereby granted the use of so much of the surface . . . as may be necessary in putting down test holes and holes for pumping water from and for ventilating and draining mines and for other like purposes necessary to secure grantee's mining and removing that portion of said Real Estate thereby granted and conveyed to it."  The Severance Deed also prohibits the mining or removal of minerals from under any dwelling house then in existence on the property and reserves for the grantors "[f]ive acres of surface where present buildings are now situated."

Read together, these provisions indicate that the parties intended to limit the mining operations on the property to those which would cause damage to no more than five acres of the surface and require the use of the surface only for the kinds of things necessary to carry on underground mining.  It was further contemplated that the grantors would be able to continue to use the buildings that existed on the property and enjoy a five-acre buffer around them free of mining activity of any kind, which is clearly inconsistent with the conveyance of the right to remove "all" of the coal.  These provisions, coupled with the fact that surface mining was unknown in Sullivan County in 1903, lead to the conclusion that the Severance Deed does not give the Plaintiffs the right to conduct surface mining on the Subject Property.  The Defendants therefore are entitled to judgment on the Plaintiffs' claim for declaratory judgment.

### D.  Specific Performance

Because the Court has determined that the Plaintiffs do not have the right to conduct surface mining on the Subject Property, the Defendants also are entitled to judgment on the Plaintiffs' claim for specific performance of the provision in the Severance Deed that permits

them to purchase for $30.00 per acre that portion of the surface necessary for surface coal mining operations.

## III.  CONCLUSION

For the reasons set forth above, the Court determines that the Plaintiffs own the coal under the Subject Property and therefore Defendant Alexander is not entitled to the declaratory judgment he seeks in his counterclaim.  However, the Severance Deed did not convey the right to use surface mining to remove the coal.  Therefore, the Plaintiffs do not have the right to conduct surface mining on the subject property, and the Plaintiffs are not entitled to either the declaratory judgment or the specific performance they seek in their amended complaint against Defendant Alexander and their second amended complaint against the Jobe Defendants.

SO ORDERED:  08/05/2009

*William T Lawrence*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic notification